**Christopher McCORKER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellees (Plaintiff below).**

No. 45S05–0305–CR–224.

Supreme Court of Indiana.

Oct. 16, 2003.

258

Marce Gonzalez, Jr., Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Christopher McCorker appeals his multiple convictions for robbery and confinement and his resulting sentence of 65 years. Our principal concern in this case is a jury instruction that Defendant contends, and the Court of Appeals agreed, relieved the State of its burden of proof by creating an impermissible mandatory presumption. Although we find the instruction to have been inartfully worded in several respects, we affirm the convictions because the instruction is a correct statement of law. To the extent the instruction creates a mandatory presumption, it is a permissible one. This conclusion is contrary to that of the Court of

Appeals in its recent case, *Walker v. State*,[1] which we now disapprove.

## Background

The evidence most favorable to the judgment indicates that on December 26, 2000, an armed robbery took place at the Cash Indiana Pawn Shop in Lake Station. Three employees were working at the time of the robbery. Three men entered the store. One man, whom the first employee later identified as Defendant, jumped over the counter towards the second employee. The employee attempted to pull his own gun until he saw the other men pointing guns at him. The employee then placed his gun on the floor. Defendant held the employee at gunpoint and retrieved his gun from the floor. Defendant pushed the employee toward the bathroom. Though the employee struggled, Defendant overpowered him and shoved him against the counter. Defendant fired his gun into the air and threw the employee to the ground saying, "If you move again, mother fucker, I'll shoot you." Defendant then put his gun in the first employee's face and ordered him to get down. After the employee got down, Defendant cocked the gun, placed it in the employee's mouth, and threatened to shoot him if he said a word. At gunpoint, the third employee was ordered to the safe and instructed to remove an envelope full of money. Defendant also sought the security tape but the employee gave him a dummie tape. The robbers confined the three employees and two customers in the bathroom. The bathroom door was shut and the people in the restroom heard glass breaking. Once it was quiet, the victims exited the bathroom and pushed the security button. The first employee later identified Defendant and Ted-

dia Caldwell as the robbers from photo arrays.

A second armed robbery occurred on January 27, 2001, at the Smoke Shop in Hammond, Indiana. As an employee who was working at the time was giving a man change from a cigarette purchase, the man and another who was with him pulled their guns. Both men announced that it was a robbery. Caldwell went around the corner of the counter, undid the chain, and ordered the employee to open the cash register. After the employee opened the cash register, Caldwell began taking out money. Defendant meanwhile pointed his gun at the employee and said repeatedly, "I'm going to kill you." Defendant and Caldwell then told the employee to open the safe. However, upon learning that the employee did not know the combination, Defendant ordered him to go to the back with him. Again, Defendant pointed his gun at the employee and repeated, "I'm going to kill you, I'm going to kill you." Caldwell then tied the employee up with duct tape in the back room. Defendant and Caldwell removed items from the store, including the security video. After the two men left, the employee hit a "panic" button. He later identified Defendant and Caldwell from photo arrays.

A few hours later, another armed robbery took place at the Cigarettes Cheaper Store in Hobart, Indiana. The store manager was working at the time of the robbery. Defendant and another man entered the store and Defendant put his gun in the manager's side. Defendant took the manager into the back room at gunpoint, threw her onto the floor, and told her he would kill her if she did anything. The manager begged for her life. Meanwhile, a customer entered the store to buy ciga-

---

1.  779 N.E.2d 1158 (Ind.Ct.App.2002) (opinion on reh'g), *trans. denied,* 792 N.E.2d 33 (Ind. 2003).

rettes and saw Caldwell. After getting her cigarettes, the customer waited at the cash register. When a few minutes passed, the customer asked Caldwell how much longer the clerk was going to be. Defendant than walked up to the customer with a gun in his hand and told her to go to the back room. She went to the back and sat down with the manager. Defendant then instructed the manager to open the cash register and she gave Defendant the keys to do so. After getting the keys, Defendant pulled the door to the back room shut. Defendant and Caldwell left the scene before removing money from the cash register but they still had the register keys in their possession.

The customer's husband saw these events while waiting in the car. He called the police on his cell phone. The police apprehended Defendant and Caldwell after a pursuit. The manager and the customer's husband later identified Defendant from a photo array.

As a result of these three incidents, Defendant was charged with four counts of robbery as Class B felonies[2] and eight counts of criminal confinement[3] and was alleged to be a habitual offender. He was tried on all these counts in a single proceeding.

At trial, Caldwell testified against Defendant. Caldwell said that he had been charged with robbery in the three incidents and had entered a plea agreement with the State where he pled guilty to one count in each. Caldwell further testified that Defendant had been with him at each of the three robberies and that Defendant was the most forceful during at least one of the robberies; Defendant had carried guns during each robbery and had actually fired his gun on one occasion; Defendant had threatened to harm or kill those present in the three locations; and that Defendant had participated in removing items from the premises of the three stores. Each of these statements was corroborated by the testimony given by the various individuals present in the three stores at the time of the individual robberies.

At the time of Defendant's trial, Caldwell had not yet been sentenced. On cross-examination, Defendant's counsel attempted to question Caldwell regarding the sentence he was facing pursuant to the plea agreement. At a bench conference, the trial judge refused to let Defendant question Caldwell about a possible sentence and then proceeded to advise the jury that the potential sentence was within the sole discretion of the court.

When the court gave its instructions to the jury, included among those instructions was jury instruction no. 8, which will be set forth in its entirety and discussed at length *infra*. The instruction advised the jury on the law of accomplice liability. Defendant did not object to this instruction.

---

**2.** "A person who knowingly or intentionally takes property from another person or from the presence of another person:
  (1) by using or threatening the use of force on any person; or
  (2) by putting any person in fear;
commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant...." Ind.Code § 35–42–5–1.

**3.** "A person who knowingly or intentionally:

  (1) confines another person without the other person's consent; or
  (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;
commits criminal confinement, a Class D felony. However, ... [it is] a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person." Ind.Code § 35–42–3–3.

The jury found Defendant guilty of all counts. The trial court sentenced Defendant to 20 years on each of the two robbery counts in the Cash Indiana Pawn Shop incident, to be served concurrently. In addition, Defendant was sentenced to 20 years for each of the robbery counts in the Smoke Shop and Cigarettes Cheaper Store incidents, to be served concurrently with each other but consecutively to the sentence for the Cash Indiana Pawn Shop incident. Finally, Defendant pled guilty to being a habitual offender. Consequently, the trial court sentenced him to 25 years on the habitual offender count, to be served consecutively to the robbery sentences. Thus, Defendant was sentenced to a total of 65 years.

The Court of Appeals reversed Defendant's convictions, holding that jury instruction no. 8 constituted fundamental error. *McCorker v. State*, 783 N.E.2d 801 (Ind.Ct.App.2003) (mem.). In doing so, the Court of Appeals followed the reasoning of its recent decision, *Walker v. State*, 779 N.E.2d 1158 (Ind.Ct.App.2002) (opinion on reh'g),[4] *trans. denied*, 792 N.E.2d 33 (Ind.2003). We granted the State's petition to transfer in *McCorker*. 792 N.E.2d 47 (Ind.2003).

### Discussion

### I

■ Defendant contends that the trial court committed reversible error when it gave jury instruction no. 8, arguing that the instruction shifted the State's burden of proof to Defendant. Because no objection was made to the giving of the instruction at trial, Defendant invokes the "fundamental error" doctrine. See *Goodwin v.*

*State*, 783 N.E.2d 686, 687 (Ind.2003) (fundamental error doctrine permits reversal of a conviction even though defendant did not object at trial or otherwise preserve the claim for appeal). Fundamental error occurs when there has been a "blatant violation of basic principles" that denies a defendant "fundamental due process." *Id.* (quoting *Wilson v. State*, 514 N.E.2d 282, 284 (Ind.1987)).

### A

We examine the procedural aspects of this claim before moving to the substantive. In *Walker v. State*, 779 N.E.2d 1158, the Court of Appeals granted petitioner Walker post-conviction relief on grounds that he had been denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to object to an instruction identical to instruction no. 8.

■ As noted, Walker's relief was granted in a post-conviction proceeding on grounds of ineffective assistance of counsel. Defendant here seeks relief in a direct appeal on grounds of fundamental error. The Court of Appeals here followed *Walker's* conclusion by finding the instruction to be erroneous and *Walker's* result by granting relief. This is not surprising. While we frame the standard for ineffective assistance of counsel and fundamental error in somewhat different terms—appropriately so, since the first is a standard of Federal Constitutional law and the second of state criminal procedure[5]—they will invariably operate to produce the same result where the procedural posture of the

---

4. Both parties to this appeal cite the original opinion of the Court of Appeals in *Walker v. State*, 769 N.E.2d 1162 (Ind.Ct.App.2002), without reference to the opinion on rehearing.

5. The two also differ in that a claim of ineffective assistance of counsel is generally best reserved for post-conviction proceedings, *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind. 1998), and a claim of fundamental error is usually available only on direct appeal, *Sanders v. State*, 765 N.E.2d 591, 592 (Ind.2002).

claim is caused by counsel's failure to object at trial.

## B

■ But was the instruction erroneous? The instruction at issue read as follows:

It is a fundamental principle of law that where two or more persons engage in the commission of an unlawful act, each person is criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan even though not intended as part of the original plan. It is not essential that participation of any person to each element of the crime be established.

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

1.  has not been prosecuted for the offense;

2.  has not been convicted of the offense; or

3.  has been acquitted of the offense.

To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to allow an inference of participation. It is being present at the time and place, and knowingly doing some act to render aid to the actual perpetrator of the crime.

The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

(Appellant's App. at 97.)

In *Sandstrom v. Montana*, the United States Supreme Court held that the Fourteenth Amendment of the U.S. Constitution requires the State to prove beyond a reasonable doubt every material element of a crime, and that a jury instruction that shifts that burden to the defendant violates the defendant's due process rights. 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Defendant's claim is that jury instruction no. 8 violates the mandate of *Sandstrom*.

The instruction at issue in *Sandstrom* is well known. In that case, the jury had been instructed: "the law *presumes that a person intends* the ordinary consequences of his voluntary acts." 442 U.S. at 512, 99 S.Ct. 2450 (emphasis added). Counsel for the *Sandstrom* defendant made a timely objection to the instruction, arguing that " 'the instruction ha[d] the effect of shifting the burden of proof on the issue of' purpose or knowledge to the defense and that 'that is impermissible under the Federal Constitution, due process of law.' " *Id.* at 513, 99 S.Ct. 2450. The objection was overruled and Sandstrom was convicted. The Supreme Court initially determined that the jury could have found this to be a "mandatory presumption," that is, that the jury was required to find that Sandstrom intended the consequences of his acts so long as it found that Sandstrom had voluntarily performed them. *Id.* at 514, 99 S.Ct. 2450. The Court also pointed out that the *Sandstrom* jury had not been informed that the presumption could be rebutted or how it could be rebutted. *Id.* at 517, 99 S.Ct. 2450. The Court concluded that because the jury might have interpreted the judge's instruction to shift the burden of proof on the element of Sandstrom's intent, which would have deprived

Sandstrom of his due process rights, the instruction was unconstitutional. *Id.* at 524, 99 S.Ct. 2450.

We do not agree with Defendant that instruction no. 8 shifted the burden of proof from the State on an essential element of the charged offense.

To be sure, there are problems with instruction no. 8 and we counsel courts against using it in the form given here. First, the preamble to the instruction uses the phrase, "It is a fundamental principle of law that. . . ." The rule of accomplice liability is certainly a principle of law and may be even a fundamental one. But there are many fundamental principles of law embodied in jury instructions and we think it unhelpful to label some as such and not others. At the same time, we think jurors recognize that this phraseology is little more than a manner of speaking and does not speak to the core of their

responsibility. In any event, it was not objected to.

It is also a weakness of the instruction as given that it did not recite the State's burden of proving beyond a reasonable doubt that Defendant knowingly or intentionally aided, induced, or caused Caldwell to commit the unlawful acts at issue. But the jury was thoroughly instructed that the State's burden of proof was beyond a reasonable doubt.[6] We cannot conclude that the trial court abused its discretion by not including the reasonable doubt language in this particular instruction. *Ivy v. State*, 715 N.E.2d 408, 410 (Ind.1999) ("[T]he jury was thoroughly instructed on the State's burden of proof beyond a reasonable doubt [by the other instructions given]."); *Richards v. State*, 481 N.E.2d 1093, 1095 (Ind.1985) ("[I]nstructions must be considered as a whole, with reference to each other, in determining whether the

6. Jury Instr. No. 4 ("To each count of the Information in this case, the Defendant has entered a plea of not guilty, which makes it incumbent upon the State of Indiana to prove to your satisfaction, *beyond a reasonable doubt,* each and every material allegation of any or all counts of said Information. The burden of proof in a criminal case is upon the State alone and it never shifts to the defendant.") (Appellant's App. at 93) (emphasis added); Jury Instr. No. 5 ("To convict the defendant of the crime of Criminal Confinement, a class B felony, the State must have proved beyond a reasonable doubt that the defendant . . .") (Appellant's App. at 94); Jury Instr. No. 7 ("In order to convict the defendant, the State must have proved beyond a reasonable doubt that the defendant . . .") (Appellant's App. at 96); Jury Instr. No. 9 ("The fact that an Information has been filed charging the Defendant with the commission of a crime does not give rise to any presumption of guilt and is not to be considered by the jury as any evidence of guilt. On the contrary, it is a fundamental concept in our law that the Defendant comes into Court presumed to be innocent of the charge, and this presumption remains throughout the trial of the case until and unless it is overcome by

competent proof of guilt beyond a reasonable doubt. . . . If at the conclusion of the trial there remains in your mind a reasonable doubt concerning the Defendant's guilt, you should find him not guilty. Every reasonable doubt arising from the evidence, the lack of evidence or a conflict in the evidence in this case must be construed in favor of the Defendant.") (Appellant's App. at 98); Jury Instr. No. 10 ("A 'reasonable doubt' is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case.") (Appellant's App. at 99); Jury Instr. No. 11 ("You, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crimes you must find the defendant not guilty.") (Appellant's App. at 100); Jury Instr. No. 17 ("[B]ut if after a careful consideration of the law and the evidence in the case, you are satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, you should return your verdict accordingly.") (Appellant's App. at 1).

trial court erred in charging the jury.") (citations omitted).

Still a third weakness of instruction no. 8 is that it uses many of the same words—or close synonyms—that were used in the unconstitutional instruction disapproved in *Sandstrom*. Although, as we explain in a moment, we find them to have been used in a constitutional fashion here, the use of the words and phrases "fundamental principle of law," "probable and natural consequences," and "intended" in the same sentence certainly spotlights instruction no. 8 for *Sandstrom* scrutiny.

But we do not find instruction no. 8 to violate *Sandstrom*. The problem in *Sandstrom*, to repeat, was that the instruction could be understood by the jury as either (1) an irrebuttable direction by the court to find intent once convinced that defendant's actions were voluntary or (2) a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved the contrary by some quantum of proof greater than the law requires. Either interpretation would be contrary to the requirements of the Due Process Clause because intent was an element of the charged offense and the jury was free to determine whether or not the State had proved its existence beyond a reasonable doubt.

The important thing to remember about *Sandstrom* in this context is that it did not outlaw mandatory presumptions in jury instructions. Indeed, jury instructions are full of mandatory presumptions as to what the law requires once the jury has found certain facts. What *Sandstrom* held is that a jury instruction cannot require a jury to find that—cannot impose a mandatory presumption that—the State has met its burden of proof on an element of the charged offense. That is for the jury to decide; it cannot be mandated or presumed.

Jury instruction no. 8 did not instruct the jury to presume or otherwise find *intent* (or any other element of the crimes of which Defendant was accused) from the consequences of Defendant's acts. Rather, it instructed the jury that it could impose *liability or guilt* if it found that Defendant knowingly aided, supported, helped, or assisted Caldwell in the commission of the charged crimes. This was a correct statement of law, a permissible presumption, that did not impinge in any way on the jury's fact-finding prerogative. Furthermore, instruction no. 8 contains language helpful to Defendant to the effect that mere presence at the scene of the crime and knowledge that a crime was being committed were not sufficient to allow an inference of participation. In at least this respect, the instruction is the antithesis of *Sandstrom* error.[7]

Although for the reasons set forth above, we direct trial courts not to use this formulation in instructing juries on accomplice liability, it was not *Sandstrom* error to give jury instruction no. 8.

This analysis disapproves the holding in *Walker v. State*, 769 N.E.2d 1162, 1171 (Ind.Ct.App.2002), *trans. denied*, which found the exact same instruction to be unconstitutional. (*Walker* held that the words "fundamental principle" denoted a level of importance that ultimately created a presumption. As our analysis above suggests, we do not necessarily disagree

---

7.  That is, it would have been *Sandstrom* error had the instruction required the jury to find that Defendant aided Caldwell if the jury found Defendant present at the scene of the crime or that he knew the crime was being committed. But the instruction instead directed the jury that while those factors could be considered by them, they were not "sufficient to allow an inference of participation."

with this characterization. But the presumption, if there was one, created here was permissive—the jury could find or presume liability or guilt if it found Defendant aided Caldwell.)

## II

■ Defendant also contends that the trial court erred by not permitting him to cross-examine Caldwell regarding the possible sentence Caldwell would receive pursuant to the terms of the plea agreement Caldwell entered with the State. Trial courts have wide discretion to determine the scope of cross-examination, and a trial court's decision as to the appropriate extent of cross-examination will only be reversed for an abuse of discretion. *Appleton v. State*, 740 N.E.2d 122, 124 (Ind. 2001); *Marshall v. State*, 621 N.E.2d 308, 316 (Ind.1993).

■ On the other hand, the Sixth Amendment of the United States Constitution guarantees a defendant the right to confront witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This right is secured for defendants in state criminal proceedings through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We have previously determined that any beneficial agreement between an accomplice and the State must be revealed to the jury. *Morrison v. State*, 686 N.E.2d 817, 818 (Ind.1997); *Newman v. State*, 263 Ind. 569, 572–73, 334 N.E.2d 684, 687 (1975). "This rule serves to help the jury better assess the reliability and honesty of the felon-witness." *Morrison*, 686 N.E.2d at 819. The full extent of the benefit offered to a witness is relevant to the jury's determination of the weight and credibility of the witness's testimony. *Standifer v. State*, 718 N.E.2d 1107, 1110 (Ind.1999); *Jarrett v. State*, 498 N.E.2d 967, 968 (Ind.1986)

("[S]ignificant harm results when the jury is prevented from learning the extent of benefit received by a witness in exchange for his testimony.").

■ The trial court abused its discretion when it prevented Defendant from cross-examining Caldwell regarding the beneficial sentence he would likely receive under the plea agreement. When a trial court excludes testimony in violation of a defendant's federal constitutional right to confront witnesses, the conviction will be sustained only if the error is harmless beyond a reasonable doubt. *Standifer*, 718 N.E.2d at 1110–11 (*citing Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Whether the error was in fact harmless depends on factors such as the importance of the witness's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. *Id.* at 1111 (citations omitted).

■ In the present case, Caldwell's testimony regarding Defendant's presence and participation in the three robberies was merely cumulative of the testimony offered by the witnesses at each of the three locations. Caldwell's testimony did not further incriminate Defendant in terms of his role in the planning of the crimes since Caldwell in fact testified that the crimes were not planned. In addition, besides the inability to cross-examine regarding a possible sentence, Defendant was permitted to conduct an extensive cross-examination of Caldwell. In fact, Defendant was able to cross-examine Caldwell regarding the inconsistencies between his trial testimony and an earlier statement filed with the police, the presence of the beneficial plea agreement, and the delay in

sentencing until a time following Defendant's trial—all of which undermined Caldwell's credibility.

Thus, given the extent of the cross-examination Defendant conducted and the substantial cumulative evidence by other witnesses that placed Defendant at the scenes of the three robberies and corroborated his behavior, any error resulting from Defendant not being permitted to cross-examine as to the exact sentence Caldwell would likely receive under the plea agreement was harmless beyond a reasonable doubt.

### III

Defendant contends he received ineffective assistance of counsel because his counsel failed to (1) make an offer of proof as to the full benefits afforded to Caldwell under the plea agreement with the State; and (2) object to jury instruction no. 8 as violative of Defendant's federal due process rights.

■■■ Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Perez v. State,* 748 N.E.2d 853, 854 (Ind.2001). First, the defendant must show that the counsel's performance was deficient by falling below an objective standard of reasonableness and the resulting errors were so serious that they resulted in a denial of the right to counsel guaranteed under the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced his defense. *Id.* Prejudice is shown with a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* This reasonable probability is a probability sufficient to undermine confidence in the original outcome of the proceeding. *Id.*

Defendant contends that his counsel should have made an offer of proof of the importance behind cross-examining Caldwell regarding the specific terms of his plea agreement. But given our finding *supra* that Caldwell's testimony was not the sole basis of his conviction—that there was testimony from numerous witnesses at the three different crime scenes that placed Defendant at the scenes and described his involvement—the strength of his defense was not prejudiced by the failure to make the offer of proof.

■■■ As to Defendant's contention that his counsel should have objected to final jury instruction no. 8 as violative of his due process rights, we held above that the instruction was not erroneous. " 'When an ineffective assistance of counsel claim is based on trial counsel's failure to make an objection, the appellant must show that a proper objection would have been sustained by the trial court.' " *Lambert v. State,* 743 N.E.2d 719, 732 (Ind.2001) (*quoting Lloyd v. State,* 669 N.E.2d 980, 985 (Ind.1996)).

### IV

■■■ The trial court sentenced Defendant to a total of 65 years.[8] The trial court based the consecutive sentences on "the aggravating factor of the defendant's past criminal history [which] demonstrates the defendant's inability to be rehabilitated. Imposition of probation in the past and short prison sentences have not deterred the defendant from criminal activity. The defendant is unable to conform to society's rules and is violent in the commission of his crimes." (Appellant's App. at 113.)

---

8. As explained above, this resulted from 20–year sentences for each of the three robbery counts, with two of those terms to be served concurrently with each other and consecutively to the third term, combined with a 25–year habitual offender enhancement. (Appellant's App. at 110–14, 117.)

Defendant contends that his sentence was manifestly unreasonable because it was improper for a trial court to enhance a presumptive sentence by relying on his criminal history and violent nature of the offenses since the nature of the offenses, and violence and/or use of a weapon are contemplated in the Class B enhancement of the robbery charge. Thus, according to Defendant, the trial court essentially enhanced a presumptive sentence by using the underlying elements of the offense.

The record shows that Defendant had accumulated thirteen felony convictions for robbery, aggravated criminal sexual assault causing bodily harm, aggravated criminal sexual assault, criminal sexual assault, unlawful restraint, possession of a controlled substance, manufacturing and delivery of a controlled substance, and delivery of cocaine. (R. at 607–08.) (The State's information on the habitual offender count included one possession of controlled substance conviction and one aggravated criminal sexual assault conviction.) (Appellant's App. at 60.)

Defendant's significant criminal history and inability to rehabilitate were sufficient to justify consecutive sentences under Ind. Code § 35–38–1–7.1. The trial court could well have reached its decision without even examining the violence involved in the present offenses. We are not persuaded that a 65–year total sentence is manifestly unreasonable.

### Conclusion

Having granted transfer pursuant to Indiana Appellate Rule 58(A), we now affirm Defendant's convictions and affirm his sentences totaling 65 years.

SHEPARD, C.J., DICKSON, BOEHM, and RUCKER, JJ., concur.