**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 27 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEPHENIE K. GOOKINS**
Campbell Kyle Proffitt LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAMON TYREE JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1111-CR-1020 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause No. 29D02-0907-FB-131

**July 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial Damon Tyree Johnson was convicted of Armed Robbery,[1] a class B felony. Johnson presents two issues for our review:

1. Did the trial court abuse its discretion when it limited Johnson's cross-examination of his accomplice?

2. Is the evidence sufficient to support Johnson's conviction for robbery as a class B felony?

We affirm.

On the evening of July 9, 2009, Brian Spurlock, Chris Allan, Jos McGann, Cory Renfro, and Jessica Reyes were hanging out together in Noblesville, Indiana. Brian was driving his mother's white SUV and the others were passengers. At some point late in the evening, the group decided to try to get some "weed." *Transcript* at 231. Chris Allan knew someone who could provide them with the desired marijuana, but the group first needed to get some money. Chris contacted Antwon Baker, a/k/a T.J., because Baker owed him money. Baker directed the group to the Marilyn Ridge subdivision, where he lived, so they could meet up. Johnson also lived in that subdivision and when Chris made contact with Baker, Baker was at Johnson's residence.

When Spurlock and the others arrived at the Marilyn Ridge subdivision, Baker met them at the entrance and directed Spurlock to proceed to a park within the subdivision. After a few minutes, Baker approached Spurlock, who was sitting in the driver's seat of the SUV. Spurlock noticed that Baker's eyes were shifting and that he appeared to be looking around the area. Spurlock then heard the metal sliding of a gun off to the rear of the car and was immediately approached by a man wearing a red ski mask. That man, later identified as

---

[1] Ind. Code Ann. § 35-42-5-1 (West, Westlaw current through legislation effective May 31, 2012).

2

Johnson, placed the gun to the side of Spurlock's head and demanded money. The others in the SUV exited the vehicle and ran away from the scene. Baker opened the car door and then he and the masked man went through Spurlock's pockets, taking approximately $150 in cash. Spurlock asked that they leave him with his identification, and Baker tossed Spurlock's wallet and cards on the pavement. Johnson and Baker fled, meeting at Baker's residence, where they divided the money.

A 911 call alerted Noblesville police to a man with a firearm in the Marilyn Ridge subdivision. Officers arrived at the scene of the robbery and encountered Spurlock, who gave a statement to police. The officers also interviewed the others who had returned to Spurlock's vehicle after fleeing while the robbery was in progress. The officers detained Baker, who was eventually interviewed by Noblesville Police Detective Cynthia Rodriguez. In his statement, Baker denied involvement in the robbery, but made several statements that implicated Johnson.

During their investigation, the police obtained warrants to search Johnson's home the morning of July 10. During the search, officers discovered a black sweatshirt and a costume spider-man mask. At Baker's residence, officers found a gray sweatshirt. Officers did not find a gun or weapons of any kind at either residence and no weapons were located during a search of the community park.

In July 2009, the State charged Johnson with one count of armed robbery, a class B felony. The State also filed a juvenile charge of robbery against Baker, who was sixteen years old at the time. After Baker was charged with a second robbery stemming from a separate incident, the charge in the instant case was waived to adult criminal court. Baker

ultimately entered into a plea agreement with the State to plead guilty to a single charge of class C felony robbery for the first charged offense (i.e., his involvement in the instant case). The State agreed to dismiss the second charge of robbery pending against him and to a sentencing cap of six years with two years suspended, with placement for the executed portion to be argued. As part of the plea agreement, Baker agreed to testify at Johnson's jury trial in this case regarding his and Johnson's participation in the robbery.

A jury trial was held from October 4 to October 6, 2011. Baker, Spurlock, and McGann all testified for the State during Johnson's jury trial. While Baker was on the stand, Johnson cross-examined him at length regarding his statement to Detective Rodriguez and the terms of his plea agreement. Johnson also cross-examined Baker about the maximum sentence he could have received had he been convicted of both charged robberies. The trial court, however, did not permit Johnson to cross-examine Baker about life within the Department of Correction. At the conclusion of the trial, the jury found Johnson guilty as charged. The trial court subsequently sentenced Johnson to ten years with four years suspended.

### 1.

Johnson argues that the trial court abused its discretion in limiting his ability to cross-examine Baker, his accomplice. Specifically, Johnson contends that it was error to limit his inquiry of Baker regarding what life in jail would be like and the things he would miss if sentenced to a significant term of imprisonment. Johnson maintains that "[t]he inability to discuss the extent of Baker's loss of liberties while incarcerated [did] not allow the Defense

4

to paint the whole picture and show the jurors exactly what 'bang for his buck' Baker received when he accepted a plea agreement." *Appellant's Brief* at 9.

"Trial courts have wide discretion to determine the scope of cross-examination, and a trial court's decision as to the appropriate extent of cross-examination will only be reversed for an abuse of discretion." *McCorker v. State,* 797 N.E.2d 257, 266 (Ind. 2003). The Sixth Amendment to the United States Constitution guarantees a defendant the right to confront witnesses against him. *McCorker v. State,* 797 N.E.2d 257 (citing *Davis v. Alaska,* 415 U.S. 308 (1974)). In state court proceedings, this right is secured for defendants through the Fourteenth Amendment. *Id.* (citing *Pointer v. Texas,* 380 U.S. 400 (1965)).

"The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally-protected right of cross-examination." *McCain v. State*, 948 N.E.2d 1202, 1206 (Ind. Ct. App. 2011) (citing *Delaware v. Van Arsdall*, 475 U.S. 673 (1986)), *trans. denied.* Thus, any agreement between the witness and the state and any promises, grants of immunity, or rewards offered in return for testimony must be disclosed to the jury. *Rubalcada v. State,* 731 N.E.2d 1015 (Ind. 2000). This serves to help the jury better assess the reliability and honesty of the witness. *McCorker v. State,* 797 N.E.2d 257. "The full extent of the benefit offered to a witness is relevant to the jury's determination of the weight and credibility of the witness's testimony." *Id.* at 266.

As this court aptly noted years ago:

> Certain basic principles apply to the testimony of an accomplice (or co-conspirator). An accomplice's testimony is highly suspect, *Newman v. State* (1975) 263 Ind. 569, 572, 334 N.E.2d 684, 687, and should be strongly scrutinized by the trier of fact. *Kelley v. State* (1984) Ind., 460 N.E.2d 137, 138. This degree of scrutiny arises from a recognition that, "[h]uman nature

5

would tend to cause an accomplice to 'unload' against their partners and desire to clear themselves as much as possible of blame for a crime . . . ." *Newman, supra,* 334 N.E.2d at 687. To analyze effectively the testifying accomplice's credibility, the fact finder must have before it, "a frank disclosure of any promises by the State or the prosecuting attorney to grant immunity to a witness and . . . any rewards offered to a witness." *Adler v. State* (1967) 248 Ind. 193, 197, 225 N.E.2d 171, 173. *See Bewley v. State* (1966) 247 Ind. 652, 655, 220 N.E.2d 612, 614 (improper limit on cross-examination when questions of pending financial reward from employer disallowed). This disclosure must include all relevant circumstances which caused or induced the witness's testimony. *Newman, supra.*

*Samuels v. State*, 505 N.E.2d 120, 122 (Ind. Ct. App. 1987). It is well settled that the defendant is entitled to elicit the specific penalties a witness may have avoided through an agreement with the State. It is certainly relevant that the jury be permitted to consider the amount of compensation a witness expects to receive and the quantity of benefit to the accusing witness. *Jarrett v. State*, 498 N.E.2d 967 (Ind. 1986). It is proper that the disclosure to the jury include whether the accusing witness is avoiding imprisonment and how much. *Id.*

Here, the trial court permitted Johnson to cross-examine Baker regarding the maximum sentences he faced had he not agreed to testify against Johnson as well as the sentence he received in exchange for his testimony. The trial court, however, sustained the State's objection to Johnson's attempts to question Baker about living conditions while incarcerated and prison policies.

We first note that Johnson offered no foundation for such cross-examination or an offer to prove that Baker had personal knowledge of Department of Correction policies or living conditions. To be sure, Baker was sixteen years old and had spent only a short amount of time in the county jail. Baker was thus in no position to inform the jury about life in

6

prison. Further, Johnson's argument presumes that jurors are ignorant as to the loss of liberties attendant upon incarceration. To the contrary, it seems to be commonly known that imprisonment is not a pleasant experience. Based on the foregoing, we conclude that the trial court did not abuse its discretion in limiting Johnson's cross-examination of Baker to the quantity of benefit in terms of imprisonment that Baker received by pleading guilty.

2.

Johnson argues that the evidence is insufficient to support his conviction. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

To sustain a conviction for armed robbery, the State must prove that a person committed a robbery while armed with a deadly weapon. I.C. § 35-42-5-1. Johnson argues that the State failed to present evidence that proved beyond a reasonable doubt that Johnson was armed with a deadly weapon at the time of the incident. Although it is not necessary for the weapon to be revealed during the robbery, *Schumpert v. State*, 603 N.E.2d 1359 (Ind. Ct. App. 1992), or admitted into evidence at trial, *Brown v. State*, 266 Ind. 82, 360 N.E.2d 830 (1977), it is necessary for the State to show that the defendant was in fact armed with a deadly weapon at the time of the robbery. *Gray v. State*, 903 N.E.2d 940 (Ind. 2009).

In *Gray*, the defendant robbed a restaurant while keeping something in his pocket and

7

speaking as though he might have had the means to kill the restaurant's patrons. None of the witnesses testified that defendant had a gun. The only witness who observed the object in the defendant's pocket testified that she "figured it was gun," "thought it was a gun," and saw "something that could have been a gun." *Id*. at 945. Our Supreme Court reversed the defendant's conviction for armed robbery, finding, at most, that this evidence established that the defendant may have been armed. *Gray v. State*, 903 N.E.2d 940.

In contrast to *Gray*, Spurlock testified that Johnson held a pistol against Spurlock's head and that he "saw the gun." *Transcript* at 244. McGann, a passenger in the back seat of Spurlock's car, testified that he saw one of the robbers hold a gun to Spurlock's head while demanding the contents of Spurlock's pockets. McGann described the gun as resembling the "ones the cops carry around" and that the pistol was approximately a foot away from him such that he could have reached out and touched it. *Id*. at 277. Baker, who was standing near Johnson during the robbery, also testified that Johnson used a firearm when he demanded Spurlock to turn over his money.

Johnson's attacks on the sufficiency of the evidence point out minor discrepancies in the witness's descriptions of the firearm and the witnesses' inability to provide specific information concerning the manufacturer and type of firearm used. Johnson is asking this court to second-guess the jury's determination and find that the garden-hose nozzle found in the park in the general area where the robbery occurred, rather than a firearm that was never located by police, was used to perpetrate the robbery. We will not reweigh the evidence or reassess the credibility of the witnesses. The State presented sufficient evidence from which the jury could have concluded that Johnson perpetrated the robbery while armed with a

8

deadly weapon.

In the alternative, Johnson argues that the evidence that he committed any robbery is insufficient. Johnson directs us to the testimony of his mother and sister, who both offered alibi testimony that Johnson was at home during the robbery. Johnson maintains that his alibi testimony carries more weight than the inconsistent testimonies given by the witnesses to the robbery. Again, Johnson's argument amounts to a request to reweigh the evidence and judge the credibility of the witnesses. The discrepancies noted by Johnson are minor and Johnson overlooks the substantial similarities across the testimony of the witnesses that support his conviction. Johnson has provided no reason to overturn the jury's decision and his conviction for armed robbery as a class B felony.

Judgment affirmed.

MAY, J., and BARNES, J., concur.