## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

James Whatley
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Whatley, *Appellant-Defendant,* | May 25, 2017 |
| v. | Court of Appeals Case No. 49A02-1512-PC-2338 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Mark Stoner, Judge |
| | The Honorable Jeffrey Marchal, Magistrate |
| | Trial Court Cause No. 49G06-0709-PC-195388 |

**Altice, Judge.**

## Case Summary

James Whatley, pro se, appeals the denial of his petition for post-conviction relief (PCR petition) in which he alleged that he received ineffective assistance of both trial and appellate counsel. His ineffectiveness arguments encompass claims of instructional error, improper admission of evidence, and procedural misconduct. He also claims that appellate counsel failed to present the sufficiency issue well on direct appeal and trial counsel failed to present evidence of a possible intervening cause.

We affirm.

## Facts & Procedural History

In the early morning hours of August 22, 2007, Whatley's girlfriend Debra Bigham drove Whatley and Ciera Pedrey to the Relax Inn in Indianapolis. The women waited in Whatley's car at the back of the motel while Whatley went to a room on the second floor to deliver crack cocaine. When he had not returned after about ten minutes, Bigham honked the horn. Apparently, Whatley had fallen asleep inside the motel room because he had been using cocaine and not sleeping for several days.

Shortly thereafter, Bharat Patel, the owner and manager of the motel, approached the women with a flashlight and angrily demanded that they leave. This was not the first time that Patel had ordered Bigham and/or Whatley to leave the premises, which they frequented for illegal purposes. As Bigham explained that she was waiting for a friend, Patel picked up a rock and threw it at her. Bigham then drove to the front of the motel and sent Pedrey to get

Whatley. As Pedrey walked toward the motel, Patel came around, picked up a beer bottle, and threw it at her, chasing her back to the car. Patel then hit the hood of the car and the windshield before Bigham and Pedrey drove away. Patel called the police to report the trespass around 2:00 a.m.

[5] Bigham drove to a nearby gas station and called Whatley. She indicated that Patel had attacked her again and that she would not return to the motel to pick up Whatley. Instead, she agreed to meet him in a drive-in parking lot next to the motel. Whatley showed up several minutes later out of breath. He hurriedly directed Bigham into the passenger seat and as he sat in the driver seat, he stated: "Baby, you don't have to worry about it no more. He's not…going to f*** with you no more." *Trial Transcript* at 86. Whatley then asked Bigham and Pedrey to check on Patel.

[6] The women went up an exterior stairway and found Patel lying motionless on his back on the second-floor balcony. Bigham shook Patel's leg but could not wake him. About this same time, IMPD Officer Conrad Simpson arrived at the motel in response to Patel's earlier call. As the women descended the stairs, they notified the officer that Patel needed help. Officer Simpson found Patel breathing but unresponsive with a laceration on the back of his head and blood

coming out of one ear. Patel's right hand was clinched around a set of keys and a cordless phone and flashlight were near his body.[1]

[7] Patel suffered a large contusion to the back left-side of his head with an associated skull fracture and brain injury. He never regained consciousness and died in the hospital about a month later once life support was removed. An autopsy revealed that Patel's death was caused by a blunt force injury to the back of his head. In the opinion of the pathologist, Dr. Kent Harshbarger, the injury was consistent with Patel falling and striking his head on the ground.

[8] On September 20, 2007, Bigham gave a statement to police regarding the events in question. In addition to providing many of the facts as set out above, she indicated that Whatley picked her and Pedrey up from the gas station after they were permitted to leave the scene. He then told Bigham that he had struck Patel in the head two times with his fist.

[9] Shortly after Patel's death, Christina Wilson – a resident of the motel – came forward as an eyewitness in the case. On the night in question, Wilson came upon a heated confrontation between Patel and two individuals that were inside a vehicle, and then she hurried toward her room on the second floor on Patel's direction. Wilson watched from her doorway as Patel came upstairs and pounded on a door. She observed a black male come out of another room and

---

[1] Upon later testing in the crime lab, "very tiny stains" of Patel's blood were found on the lens and strap of the flashlight. *Trial Transcript* at 222.

walk up to and hit Patel, who immediately fell backward to the concrete floor. Wilson could not see whether the man used his fist or an object. After striking Patel, the man turned and walked down the stairs and around the building. Wilson could not identify the man but provided a general description.

[10] On September 25, 2007, the State charged Whatley with murder. Specifically, the State alleged that Whatley knowingly killed Patel "by striking with his fists at and against [Patel], thereby inflicting mortal injuries upon [Patel]". *Direct Appeal Appendix* at 22.

[11] While in the Marion County Jail, Whatley spoke about his case with another inmate, Lonnie Carson, in the spring of 2008 and showed him related documents. Carson sent a letter to the prosecutor in early May 2008. According to Carson, Whatley indicated he struck Patel once in the back left-side of the head with a hammer and then went through Patel's pockets. Whatley also told Carson that there were three female witnesses that he wanted to "disappear if at all possible." *Id*. at 258-59. Further, Whatley told Carson that he was concerned he left a footprint at the scene so he burned the shoes along with the hammer.

[12] Whatley's two-day jury trial commenced on August 25, 2008. Wilson, Bigham, and Carson were among the witnesses for the State. Despite Carson's reference to a hammer, the State proceeded under the theory that Whatley approached his unsuspecting victim and forcefully struck him once or twice with his fist, knocking Patel backward to the concrete ground. At trial, the State used

Carson's testimony to show that Whatley admitted striking Patel and characterized the reference to the hammer as bragging by Whatley. In addition to aggressively cross examining the witnesses in an attempt to discredit them, Whatley's trial counsel also requested an instruction on involuntary manslaughter, a lesser included offense.[2]

[13] The jury found Whatley guilty of murder, and the trial court subsequently sentenced him to sixty years in prison. Whatley filed a direct appeal in which he challenged the sufficiency of the evidence and the admission of evidence regarding his drug use and delivery of drugs on the night in question. Another panel of this court affirmed Whatley's murder conviction, and the Supreme Court denied Whatley's petition for transfer. *Whatley v. State*, 908 N.E.2d 276 (Ind. Ct. App. 2009), *trans. denied*.

[14] Whatley filed a pro-se PCR petition on March 31, 2010, and an amended petition on August 9, 2013. An evidentiary hearing was held on the amended PCR petition on October 2, 2014 and February 26, 2015.[3] The post-conviction court denied Whatley's PCR petition on December 11, 2016. Whatley now appeals. Additional facts will be provided below as needed.

---

[2] Involuntary manslaughter, Ind. Code § 35-42-1-4(b), contemplates an incidental killing that occurs during a battery. *Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992). "Where the killing is accomplished by a touching, as here, involuntary manslaughter may be a lesser included offense of murder." *Id.*

[3] Whatley was represented by counsel for a short time during the PCR proceedings beginning in August 2014. He fired counsel at the conclusion of the evidentiary hearing and has proceeded pro se since.

## Standard of Review for Post-Conviction Proceedings

[15] In post-conviction proceedings, the petitioner bears the burden of proving grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). The petitioner, on appeal, faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). He must show that the evidence leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Gulzar v. State*, 971 N.E.2d 1258, 1260 (Ind. Ct. App. 2012), *trans. denied*. Further, where the post-conviction court has entered findings of fact and conclusion of law, like in this case, we will not defer to its legal conclusion but will reverse its findings and judgment only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000).

## Standard of Review for Ineffective Assistance of Counsel

[16] When evaluating ineffective assistance of counsel claims, we apply the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "We afford counsel considerable discretion in choosing strategy and tactics, and '[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.'" *State v. Hollin*, 970 N.E.2d 147,

151 (Ind. 2012) (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001)). There is a strong presumption that trial counsel rendered adequate service. *Bethea*, 983 N.E.2d at 1139.

[17] With regard to the prejudice element, the petitioner must establish "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland*, 466 U.S. at 694). Further, because a petitioner must prove both deficient performance and resulting prejudice, the failure to prove either defeats such a claim. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001).

## Discussion & Decision

[18] Whatley alleges that trial and appellate counsel were ineffective in a number of ways – some related and some not. Due to the overlap of many of the claims, we will address each based on the type of error alleged.

## 1. Jury Instructions

[19] Whatley contends that appellate counsel was ineffective for failing to challenge final jury instructions 7, 8, and 10. Although he acknowledges that trial counsel objected to instruction 10 as being an improper mandatory instruction, he asserts that trial counsel failed to adequately present and preserve the issue and failed to object to instructions 7 and 8. Whatley claims that the three

instructions operated together to preclude the jury from finding him guilty of involuntary manslaughter.

[20] Whatley complains that instructions 7 and 8 precluded the jury from considering involuntary manslaughter because the instructions essentially indicated to the jury that it could consider involuntary manslaughter only if it first found Whatley not guilty of murder. In challenging these instructions, Whatley relies exclusively on *Roberson v. State*, 982 N.E.2d 452 (Ind. Ct. App. 2013). He claims that the two cases are analogous, but they are not.

[21] In *Roberson*, we found the jury instructions regarding murder and the lesser included offense of voluntary manslaughter erroneous in a number of ways. As a whole, the jury instructions indicated to the jury that "it could *only* consider convicting Roberson of voluntary manslaughter if it first found him not guilty of murder." *Id.* at 460 (emphasis in original). We explained:

> It was a clearly incorrect statement of the law to inform the jury that it could only consider convicting Roberson of voluntary manslaughter instead of murder if it first found him not guilty of murder, given that the jury instruction for murder did not inform the jury that the State had to disprove the existence of sudden heat. *Such an instruction might be accurate with respect to lesser included offenses generally*, but it is not with respect to voluntary manslaughter, given that the State must prove not only all of the elements of murder but must additionally disprove the existence of sudden heat when there is any appreciable evidence of such.

*Id.* (emphasis supplied).

[22] Whatley's reliance on *Roberson* is misplaced and represents a fundamental misunderstanding of the difference between voluntary manslaughter and involuntary manslaughter. As observed in *Roberson*, voluntary manslaughter

> is not a "typical" lesser included offense, because instead of requiring the State to prove less than all the elements of murder, it requires the State to prove all of the elements of murder *and* disprove the existence of sudden heat when there is any appreciable evidence of such in the record. Additionally, a conviction for voluntary manslaughter constitutes an acquittal of murder.

*Id*. at 456 (citation omitted and emphasis in original). Involuntary manslaughter, on the other hand, is a typical lesser included offense requiring the State to prove less than all the elements of murder. The element distinguishing murder from involuntary manslaughter is what the defendant intends to do – kill or batter. *See McEwen v. State*, 695 N.E.2d 79, 86 (Ind. 1998). Unlike when voluntary manslaughter is at issue, once the jury determined that Whatley knowingly killed Patel there was no additional consideration (such as, the absence of sudden heat) to finding Whatley guilty of murder. *Roberson* is simply not applicable in this context.

[23] Whatley next challenges instruction 10, which he contends created the type of mandatory presumption regarding intent prohibited by *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the Court found violative of the Fourteenth Amendment an instruction indicating that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id*. at 512. "The Due

Process Clause prohibits the State from relying upon an evidentiary presumption that has the effect of relieving it of its burden to prove every essential element of a crime beyond a reasonable doubt." *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016) (citing *Sandstrom*, 442 U.S. at 524). *See also Francis v. Franklin*, 471 U.S. 307, 314 (1985) (mandatory presumptions "violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense").

[24]    Instruction 10 provided:

> An individual who inflicts injury upon another is deemed by law to be guilty of homicide if the injury contributed mediately or immediately to the death of the other person. In order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to hold the defendant responsible for the actual result. A defendant is said to have contributed mediately or immediately to a death when he has put in motion a series of events ultimately ending in the Victim's death.

*Appellant's Direct Appeal Appendix* at 88. This is an instruction on causation and intervening cause. It creates no presumption regarding intent or any other essential element of the charged offense. *Cf. McCorker v. State*, 797 N.E.2d 257, 264-65 (Ind. 2003) (mandatory presumption in accomplice liability instruction did not present a *Sandstrom* problem because it did not instruct jury to presume or find intent or any other element of the charged crimes from the consequences

of defendant's acts).[4] Accordingly, no reasonable juror could have understood this instruction as a mandatory presumption on the element of intent. *See Francis*, 471 U.S. at 316 ("federal constitutional question is whether a reasonable juror could have understood the [instruction] as a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent once the State had proved the predicate acts"); *Sandstrom*, 442 U.S. at 521 ("the question before this Court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof…on the critical question of petitioner's state of mind").

[25]  Whatley has failed to show that instructions 7, 8, and 10 were erroneous. As a result, he cannot establish deficient performance of trial or appellate counsel with respect to their failing to challenge the instructions.

## Admission of Evidence

[26]  Whatley contends that trial counsel was ineffective for failing to object to certain testimony of Lonnie Carson.[5] Specifically, Whatley argues that Carson should not have been allowed to testify that Whatley used a hammer to strike

---

[4] The Court in *McCorker* emphasized that *Sandstrom* "did not outlaw mandatory presumptions in jury instructions" and noted that "jury instructions are full of mandatory presumptions as to what the law requires once the jury has found certain facts." *Id.* at 265.

[5]  Whatley baldly asserts that appellate counsel was also ineffective for not raising this evidentiary issue on appeal as fundamental error. Because Whatley presents no fundamental error analysis and does not even acknowledge the heightened standard, we find the argument waived. *See Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (fundamental error permits appellate courts to correct "the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who…strategically fail to preserve an error").

Patel. He notes that this testimony exceeded the scope of the charging information, which specifically alleged that Whatley struck Patel with his fists. Whatley claims that without this evidence the jury likely would have found him guilty of involuntary manslaughter rather than murder.

[27] Importantly, Whatley does not contend that Carson should have been precluded from testifying. He claims only that trial counsel should have moved to exclude any mention of the hammer. The result of this limitation would have been Carson testifying generally that Whatley admitted striking Patel – exactly the theory of the State's case. For strategic reasons, defense counsel could have reasonably chosen to allow Carson's reference to the hammer because it was contrary to the State's theory of the case[6] and not consistent with the eyewitness testimony or any other evidence presented by the State.[7] *See Myers v. State*, 33 N.E.3d 1077, 1099 (Ind. Ct. App. 2015) (an objection to inadmissible evidence may be waived as part of reasonable trial strategy and such strategy will not be second-guessed by this court), *trans. denied*. Indeed, this curious detail made Carson's testimony far less credible.

---

[6] The trial record reveals that the State did not rely on the reference to the hammer to establish how Patel was killed. Rather, the State downplayed this reference by characterizing it as "bragging" by Whatley. *Trial Transcript* at 300. The State also consistently argued to the jury that Patel's head trauma was suffered by his head striking the concrete floor after Patel was hit by Whatley.

[7] At the post-conviction hearing, defense counsel could not specifically recall the details of Carson's testimony but testified that his general strategy with regard to jailhouse informants is to impeach their testimony and credibility.

[28] Given that the overall defense strategy was to challenge the credibility of the State's lay witnesses (i.e., Carson, Bigham, and Wilson), we cannot say that trial counsel's failure to object to the hammer reference was "so deficient or unreasonable as to fall outside of the objective standard of reasonableness." *Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011) (quoting *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998)). *See also Hinesley v. State*, 999 N.E.2d 975, 985 (Ind. Ct. App. 2013) (looking to counsel's overall trial strategy and observing that trial counsel need not confirm every aspect of the strategic basis for counsel's actions), *trans. denied*.

### Prosecutorial Misconduct

[29] Next, Whatley complains that trial counsel failed to object to improper comments made by the prosecutor during closing and reply arguments. Whatley provides us with two single-spaced pages of quotations from the prosecutor's arguments but provides little cogent argument. We will review his claims to the extent we can decipher them. He bases his claim of prosecutorial misconduct on the fact that the prosecutor "consistently and repeatedly told the jury that Whatley knowingly killed Patel." *Appellant's Brief* at 33. Additionally, the prosecutor allegedly made statements regarding the use of helmets that were unsupported by the evidence.

[30] We find unpersuasive Whatley's assertion that it was improper for the prosecutor to argue, on several occasions, that Whatley knowingly killed Patel. Whatley was charged with knowingly – as opposed to intentionally – killing

Patel. Thus, the purpose of the prosecutor's closing argument was to persuade the jury that he knowingly killed Patel. Whatley does not explain why asserting that an element of the State's case has been proven is improper conduct.

[31] Further, the prosecutor's statements in this regard were based on the evidence. In addition to noting Whatley's assurances to Bigham that Patel would not bother her again and the significant force with which Patel's head struck the concrete,[8] the prosecutor argued:

> He knowingly killed Bharat Patel. How do we know he knew it? He knew it as we all know it. When you strike someone they fall down. You know that that is a high probability that when you strike someone unprovoked and unannounced, walk up to a person who is unprepared and you strike them, you know that there is a high probability that they are going to strike the ground. He knew that. And he knew as we know that when you strike your head on the ground there is a high probability that you will sustain serious injury up to and including death.

*Trial Transcript* at 316-17. These were all "fair characterizations of the State's view of the evidence." *Etienne v. State*, 716 N.E.2d 457, 462 (Ind. 1999).

[32] Whatley claims that the prosecutor's statements about wearing helmets to protect the head are not supported by evidence. The prosecutor noted various instances when people wear helmets and then stated:

---

[8] Dr. Harshbarger opined that Patel's skull fracture and brain injuries were caused by "a significant amount of force." *Trial Transcript* at 174. Additionally, Wilson testified that even from a distance she heard and felt Patel hit the concrete.

> Why do they strap on a helmet? To protect their head. To protect the brain that is in the head. Because when the brain strikes something with that force you end up with a cracked skull like Mr. Patel. You end up with bruising and contusions and blood in the ventricles…as described to [sic] by Dr. Harshbarger. And we know that that has a high probability of occurring. We know that because we take every precaution to protect our head and our brains from that type of injury.

*Trial Transcript* at 317. Whatley complains that the prosecutor oversimplified the matter in an attempt to make all head injuries the same as Patel's. Oversimplification, however, does not amount to prosecutorial misconduct. And jurors are expected to apply common sense and draw upon their accumulated background knowledge and experience when considering the evidence. *See Staton v. State*, 853 N.E.2d 470, 475-76 (Ind. 2006). This was all the prosecutor was asking when discussing the use and purpose of helmets.

[33] None of the specific examples argued by Whatley were cause for an objection by trial counsel. Accordingly, trial counsel was not ineffective for failing to object to these statements, and trial counsel cannot be faulted for not raising this claim on direct appeal.

### Intervening Cause

[34] Whatley asserts that trial counsel was ineffective for failing to present evidence of an intervening cause that would have negated his criminal responsibility. He claims that counsel "could have elicited this testimony either from an

independent expert or through appropriately cross-examining the State's expert, Dr. Kent Harshbarger." *Appellant's Brief* at 37.

[35] At trial, Dr. Harshbarger testified that Patel died as the result of blunt force trauma to the head. The doctor detailed the associated skull fracture and significant brain injuries, which he believed were consistent with Patel falling and striking the back of his head on the ground. Dr. Harshbarger testified that at some point in the hospital[9] Patel suffered a "large infarctus stroke of the left hemisphere of the brain, probably from the swelling." *Trial Transcript* at 177. Near the end of his life, Patel also developed pneumonia and severe pulmonary edema. Dr. Harshbarger summed up his testimony as follows:

> The cause of death is the condition, but for which the person would be alive. And there is no question that the blunt force, for which, is the injury of the fall, the striking, the skull fracturing, the brain bruise that led to the complications that ultimately cause his treatment to be futile.

*Id.* at 195-96.

[36] The evidence regarding Patel's cause of death was clearly established at trial. Whatley did not present any evidence at the post-conviction hearing that he claims should have been presented at trial to establish that an intervening cause existed. We reject his unsupported and self-serving opinion that Patel's stroke

---

[9] Patel was removed from life support within a month of sustaining his head injury.

was likely independent of the head injury. The post-conviction court did not err in denying relief on this ground.

### Presentation of Sufficiency Issue on Appeal

[37] Finally, Whatley claims that appellate counsel failed to present the sufficiency issue well on direct appeal. These types of ineffectiveness claims are almost always unsuccessful. *See Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997) (observing that these claims "essentially require the reviewing tribunal to review specific issues it has already adjudicated to determine whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision" and implicate concerns of finality and judicial economy).

[38] With regard to sufficiency, appellate counsel argued that involuntary manslaughter was the only charge supported by the evidence because Whatley did not have the requisite intent for murder. In other words, while his knowing battery of Patel resulted in death, he did not knowingly kill Patel.[10]

[39] After attacking the credibility of Carson and Bigham, Counsel emphasized that Wilson – the only eyewitness – saw a man strike Patel once, after which Patel fell backward to the ground. Wilson testified that she was surprised at the result of the strike because although it was not a tap, it did not seem that hard.

---

[10] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

Counsel went on to note Dr. Harshbarger's steadfast opinion that the fatal injuries were caused by Patel's head hitting the concrete floor. Counsel queried: "Who hits a person one (1) time and thinks of even the slim possibility that he will hit his head with such force that he will die?" *Appellant's Direct Appeal Brief* at 7.

[40] In the reply brief, counsel argued that there was no evidence to support a finding that Patel was hit with any object besides a hand – refuting the State's claim that Patel received a single vicious blow to the head with a hard object. According to counsel, the record established that Patel suffered two injuries – a punch to the front of the face and the fatal injury from the backward fall.

[41] Counsel distinguished cases cited by the State and argued that this case was much more like *Nunn*, 601 N.E.2d 334, in which our Supreme Court reduced a murder conviction to involuntary manslaughter. In *Nunn*, the defendant struck the victim one time in the head/neck with his hand, and the victim died from a severed vertebral artery, an unusual injury. Relying upon *Nunn*, counsel argued that Whatley "could not have intended or been aware of a high probability that his one (1) strike to Patel's face would kill the man." *Appellant's Direct Appeal Reply Brief* at 2.

[42] When this court affirmed Whatley's conviction on direct appeal, counsel sought transfer. Again, counsel noted that the fatal injury was caused when Patel hit the concrete floor. Counsel argued that the conviction should be reduced as in *Nunn*. The Supreme Court denied transfer.

Instead of raising flaws in counsel's argument, Whatley simply rehashes the sufficiency argument that was already ably presented by counsel on direct appeal. We agree that the sufficiency argument was strong and presented a close call, but we cannot conclude that appellate counsel was ineffective in her presentation of the issue.

## Conclusion

Whatley has failed to establish deficient performance by trial or appellate counsel. Therefore, we need not reach the prejudice prong. The post-conviction court's denial of relief was not clearly erroneous.

Judgment affirmed.

Riley, J. and Crone, J., concur.