**Daniel STANDIFER, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 67S00–9804–CR–240.**

Supreme Court of Indiana.

Nov. 10, 1999.

---

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Daniel Standifer, Jr., was convicted of the murder, aggravated battery, criminal confinement, robbery and theft of Rick Boehm and of being a habitual offender. The trial court sentenced Standifer to an aggregate term of ninety years imprisonment. He raises one issue on appeal: whether the trial court violated his Sixth Amendment right to confrontation when it precluded him from cross-examining two of the State's witnesses about their bias based on the fact that one was a confidential informant and the other was on parole. We agree that the trial court erred in constraining cross-examination on these points, but we affirm the trial court because the errors were harmless in light of the other evidence.

**Factual and Procedural Background**

On January 11, 1997, Standifer, Chuck Worman, Larry Farley and Gloria Farley, Larry's wife and Standifer's sister, visited Toppers bar in Greencastle. Boehm approached the group and made it clear that he was looking for drugs. Standifer apparently agreed to a sale and the two went outside where they snorted crystal methamphetamine.

After Standifer and Boehm returned from the parking lot, all of the group except Boehm left Toppers. The Farleys

went home and Worman and Standifer went to another bar and then returned to Toppers after a few minutes. When Worman and Standifer prepared to leave Toppers for the second time, Standifer asked Worman to give Boehm a ride home. On the way to Boehm's house, Worman's truck ran out of gas and Standifer decided to walk with Boehm to Boehm's house to call the Farleys for help while Worman waited in the truck. Worman eventually followed on foot to Boehm's house where Standifer told him that he had called the Farleys and they were bringing fuel for the truck. Worman testified that, as he was leaving the house, he saw Standifer hit Boehm twice in the face with a liquor bottle. The second time, the bottle broke. Worman testified that Boehm had no reaction after being hit and Worman witnessed no fight between Boehm and Standifer. Worman left Boehm's house, thinking that Standifer would follow him.

Worman returned to his truck alone where he encountered a DePauw police officer but did not report what he had witnessed at Boehm's house. When the Farleys arrived at the truck, Worman told them that he thought Standifer may have killed a man. The Farleys and Worman returned to the Farleys' house where Standifer soon called seeking a ride. Standifer spoke on the phone to both Farleys and also to Worman. Worman testified that Standifer told him to bring his truck to Boehm's house to pick up Boehm's television and VCR. Gloria testified that Standifer told her that he had tied up a man and she heard him threaten to cut the man's jugular if he did not "shut up." She also testified that she heard the sound of someone being hit and a gurgling sound "like the man was trying to scream out but he couldn't exactly do it." After Standifer hung up, the Farleys and Worman decided to call the police. When the police arrived at Boehm's house they found Boehm lying on the floor in a pool of blood, gasping for air. No one else was in the ransacked house.

Standifer was found hiding behind the Farleys' house. He admitted to police that after he hit Boehm in the face with a bottle, he continued to beat Boehm with his fist and kick him in the ribs, but he claimed it was in self-defense. He also beat Boehm with a fireplace iron or shovel, hit him with a plate, tied Boehm's wrists with an extension cord and put a blindfold on him. Standifer admitted that he went "above what was necessary" in beating Boehm. He then ransacked Boehm's house and took several items including jewelry and a VCR.

Boehm died two days later as a result of multiple blunt force injuries to his head that resulted in a blood clot that covered eighty percent of his brain's surface area. The pathologist testified that Boehm had suffered twenty to twenty-five blows to the head, none of which could have been caused with a fist. Many of the bones in Boehm's face and skull were broken.

Standifer was charged with five counts: attempted murder, aggravated battery, confinement, robbery and theft. After Boehm died, the information was amended to include murder and a habitual offender charge. At trial, the court prevented Standifer from asking Worman whether he was an informant for the police. During the cross-examination of Larry Farley, Standifer was permitted to reveal that Larry was on parole but was not permitted to question him about the amount of time remaining on his sentence that he would have to serve if he violated his parole. The jury convicted Standifer on all counts. The trial court merged the aggravated battery conviction with the murder conviction and sentenced Standifer to sixty years for the murder and thirty years for the habitual offender adjudication, to be served consecutively, and three years for confinement, eight years for robbery, and three years for theft, each to be served concurrently with the murder sentence, for a total sentence of ninety years.

### Sixth Amendment Right to Cross-Examine to Establish Bias

██ "[A] primary interest" secured by the Confrontation Clause is the right of

cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). A criminal defendant's Sixth Amendment right to confront witnesses is nevertheless subject to reasonable limitations placed at the discretion of the trial court to address concerns about harassment, prejudice, confusion or interrogation on issues only marginally relevant. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Standifer argues that his constitutional right to confront the witnesses against him was violated when the trial court limited his ability to cross-examine Worman and Larry on matters that established their bias in favor of the State and would have impaired their credibility. Standifer correctly points out that "[t]he partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony." *Davis,* 415 U.S. at 316, 94 S.Ct. 1105 (citation and internal quotation marks omitted); *accord Thornton v. State,* 712 N.E.2d 960, 963–64 (Ind.1999) (defendant must be afforded opportunity to conduct cross-examination of the State's witnesses to test their believability).

The trial court did not permit Standifer to cross-examine Worman about becoming an informant for the police sometime after Boehm died. Standifer argues that Worman's status as an informant and his resulting bias in favor of the State was relevant to the jury's assessment of Worman's credibility. Indiana courts have agreed that without knowing the witness' status as an informant, "the jury did not have the necessary information from which to make a meaningful evaluation of ·[the witness'] credibility." *Janner v. State,* 521 N.E.2d 709, 716 (Ind.Ct.App.1988).

█ Similarly, the trial court prevented Standifer from cross-examining Larry about the amount of time remaining on a sentence he had served for possession of crystal methamphetamine. Larry was on parole at the time of Boehm's death and Standifer's trial. Standifer argued that the amount of time remaining on Larry's sentence was a motivating factor in his cooperation with the State that would affect the jury's assessment of his credibility. Although there was no evidence of a deal between the State and Larry based on his cooperation, Standifer is correct that the extent of a benefit offered to a witness is relevant to the jury's determination of the weight and credibility of a witness' testimony. *Jarrett v. State,* 498 N.E.2d 967, 968 (Ind.1986); *Pfefferkorn v. State,* 413 N.E.2d 1088, 1089 (Ind.Ct.App. 1980) ("A witness's bias, prejudice or ulterior motives are always relevant in that they may discredit him [or her] or affect the weight of [the] testimony.").

The U.S. Supreme Court has held that by "cutting off all questioning about an event that … a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause." *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431 (State dismissed witness' drunkenness charge after speaking with authorities about the defendant's case). We agree that the trial court erred in limiting Standifer's opportunity to cross-examine Worman and Larry about their incentives to testify favorably for the State. *See Davis,* 415 U.S. at 316, 94 S.Ct. 1105 ("the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination").

Although Standifer was denied the opportunity to fully cross-examine Worman and Larry about their bias in favor of the State, his convictions will not be reversed if the State can demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *accord Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431 ("the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is sub-

ject to *Chapman* harmless-error analysis"). Whether the trial court's error is harmless depends on several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.; accord Munn v. State,* 505 N.E.2d 782, 786 (Ind.1987); *Andrews v. State,* 588 N.E.2d 1298, 1302 (Ind. Ct.App.1992) (error in limiting the testimony of witness was harmless because "the jury was under no illusion concerning the informant's credibility or character" given the testimony elicited from the informant on cross-examination that included the informant's prior criminal history, his relationship with the police concerning other controlled drug buys, his present unemployment, and the fact that he was a drug dealer).

■ Standifer argues that his self-defense claim was undermined by Worman's testimony that he saw Standifer hit Boehm with the bottle without provocation and that Boehm did not attack Standifer. Standifer argues that if Worman's bias in favor of the State were known to the jury, it would have discredited Worman's account and accepted Standifer's self-defense claim. He also argues that Larry's bias in favor of the State based on the time remaining on his possession sentence would have discredited his testimony that he heard Standifer threaten to cut Boehm's throat.

Even if Standifer had been permitted to expose the incentive of Worman and Larry to cooperate with the State and the jury had been persuaded that their testimony was entirely lacking in credit, ample evidence was introduced to support the convictions. Gloria testified that while on the phone with Standifer, Standifer told her that he tied up a man. She also heard someone being hit and heard Standifer threaten to cut the man's throat. More-

over, Standifer admitted that he hit Boehm repeatedly with a bottle, plate, and fireplace iron or shovel, and that he kicked him. These admissions, together with the autopsy report describing twenty to twenty-five blunt force injuries to the head that could not have been made by a fist, conclusively refute Standifer's self-defense claim. Accordingly, we conclude that the trial court's error was harmless beyond a reasonable doubt.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, and SULLIVAN, JJ., concur.