**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Sep 26 2012, 9:00 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STANLEY F. WRUBLE III**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BARON D. McCLUNG, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1202-CR-80 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Roland W. Chamblee, Jr., Judge
Cause No. 71D08-1108-FD-688

**September 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Baron D. McClung appeals his conviction for domestic battery, a Class D felony.[1] McClung argues that the trial court abused its discretion by limiting his cross-examination on matters that he claims established the victim's motive to falsely accuse him. We affirm.

## FACTS AND PROCEDURAL HISTORY

McClung resides at a homeless shelter. His wife, Diane McClung, kicked him out of their home one month prior to the incident in question because the couple frequently argued. Diane was considering a divorce. On August 3, 2011, Diane picked up McClung at the homeless shelter, and the two drove in Diane's van to a local laundromat. While there doing laundry, Diane made a telephone call to her sister, and the two discussed an upcoming trip to Michigan City to visit a casino. McClung overheard this conversation and asked Diane how much money she had in her wallet. Diane thought McClung was asking for money, which she did not want to give him. The couple began to argue about money with their voices raised, attracting the attention of the five or six customers and one employee inside the laundromat at the time.

Diane exited the laundromat in order to get away from McClung. McClung followed her outside. Diane headed for her van, which was parked just outside the laundromat door, but McClung grabbed her by the shirt and flung her back against the laundromat's brick wall. Diane was able to escape to her van, but McClung climbed in its passenger side. Inside the van, McClung hit Diane with a closed fist and then grabbed Diane's neck with both hands, squeezed, and told Diane he was going to kill her.

[1] Ind. Code § 35-42-2-1.3(b) (2011).

2

After the attack, a scared Diane drove McClung back to the homeless shelter. Once he was inside, she called 911. One of the other laundromat patrons also called 911. Officer Nicholas Pogotis, a patrolman with the South Bend Police Department, was dispatched to the homeless shelter, where he encountered an "upset" and "angry" McClung. Tr. p. 125. Before Officer Pogotis disclosed to McClung the nature of his investigation, McClung stated, "I did not touch her." Tr. p. 125. Officer Pogotis then found Diane a half block away with scratches on her face and neck, including one "pretty decent size scratch" on her neck that had started to bleed. Tr. p. 128. Diane also had a swollen lip. Officer Pogotis photographed these injuries, and the images were admitted into evidence at trial. Officer Pogotis also testified that Diane "had some finger marks around her neck from where she had some hands around her neck," Tr. pp 127, but these injuries were not visible in the photograph taken of them.

On August 5, 2011, McClung was charged with Class D felony strangulation, Class A misdemeanor domestic battery, and Class D felony domestic battery. At trial, during cross-examination of Diane by McClung, the State objected to McClung's question, "And he accused you of not giving him money because you were using it on drugs?"[2] Tr. p. 152. The trial court sustained the objection and then admonished the jury: "Folks, I'm going to suggest that you should ignore the comment about being mad about using drugs. They were mad apparently, okay. Thank you." Tr. p. 154.

On December 8, the jury found McClung not guilty of Class D felony strangulation but guilty of Class A misdemeanor domestic battery. Because of a prior

---

[2] Amid the State's objection, the record reflects that Diane answered this question in the affirmative, adding that this accusation "upset" her. Tr. pp. 152-52.

misdemeanor conviction for an unrelated domestic battery, McClung was also convicted of Class D felony domestic battery. McClung's two convictions in this case merged, and ultimately, he received an eighteen-month sentence. Where appropriate, additional facts will be supplied below.

## DISCUSSION AND DECISION

McClung argues that the trial court denied him his Sixth Amendment right of confrontation by excluding questions regarding his public accusation that Diane was spending money on drugs. "'[A] primary interest' secured by the Confrontation Clause is the right of cross-examination." *Standifer v. State*, 718 N.E.2d 1107, 1110-11 (Ind. 1999) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). This includes the ability to attack a witness' credibility through questions aimed at "revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Beaty v. State*, 856 N.E.2d 1264, 1269 (Ind. Ct. App. 2006) (quoting *Davis*, 415 U.S. at 316). "The partiality of a witness…is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Standifer*, 718 N.E.2d at 1110 (quoting *Davis*, 415 U.S. at 316). However, "'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *McQuay v. State*, 566 N.E.2d 542, 543 (Ind. 1991) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

McClung claims that questions regarding his accusation that Diane was spending

4

money on drugs would have revealed Diane's anger at having her "dirty laundry" aired in public at the laundromat, McClung's theory being that this anger motivated Diane to falsely accuse McClung of strangulation and domestic battery. However, a trial court does not abuse its discretion in excluding such evidence if the jury has been made aware of the witness' bias and the defendant had sufficient opportunity to explore it. *Beaty*, 856 N.E.2d at 1269-70 (citing *Hatchett v. State*, 503 N.E.2d 398, 404 (Ind. 1987)).

Here, McClung elicited numerous statements on cross-examination that Diane was angry at McClung for asking for and taking her money and for publicly chastising her for gambling.

> [Counsel]: McClung often asked you for money…[and] that upset you, didn't it?
> [Diane]: Yes.
> [Counsel]: Made you angry?
> [Diane]: Yes.
> [Counsel]: Made you resentful?
> [Diane]: Yes.

Tr. p. 152.

> [Counsel]: Your husband said some things that upset you, right?
> [Diane]: Yes.
> [Counsel]: And it was essentially about money?
> [Diane]: Yes.
> [Counsel]: About you going to the casino?
> [Diane]: Yes.
> [Counsel]: He said it was unchristian to spend money at a casino…?
> [Diane]: Yes.
> [Counsel]: And that upset you?
> [Diane]: Yes.
> [Counsel]: It got heated?
> [Diane]: Yeah.
> [Counsel]: You got angry?
> [Diane]: Yes.

Tr. pp. 154-55. There was ample evidence presented to the jury that Diane was angry at

McClung. Moreover, McClung had sufficient opportunity to explore Diane's ulterior motive, but he chose not to do so in any detail beyond the questions listed above. Therefore, we cannot say that the jury would have received a significantly different impression of Diane or her motive to accuse McClung had he been permitted to cross-examine Diane regarding his public accusation that she was spending money on drugs. We conclude that the trial court did not abuse its discretion in prohibiting this line of questioning.

We further conclude that, had the trial court abused its discretion in limiting the scope of McClung's cross-examination, it would not constitute reversible error.

> Whether the trial court's error is harmless depends on several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

*Standifer*, 718 N.E.2d at 1111 (quoting *Van Arsdall*, 475 U.S. at 684). Here, there was no indication that Diane falsely accused McClung of domestic battery. Although Officer Pogotis admitted that someone could "possibly fall" and sustain a swollen lip like Diane's, McClung presented no evidence tending to show that Diane sustained her injuries in this manner. In fact, he proposed his "accident" theory to Diane when questioning her on cross-examination, and it was adamantly denied. [3]

> [Counsel]:    And he reached out to grab your shirt to stop you from keeping going, isn't that right?
> [Diane]:    No.

---

[3] The trial judge came to the same conclusion in denying McClung's proposed jury instruction on an accident defense: "While it's a theory you posed in questions there is no evidence it occurred in that fashion." Tr. p. 162.

6

[Counsel]: And when he grabbed your shirt the momentum caused you to kind of pull back, right?

[Diane]: No.

[Counsel]: In fact, it was the momentum of you following forward that pulled your shirt around your neck?

[Diane]: No.

[Counsel]: In fact, that momentum that caused you to swing around and hit the building is how you got the hurt lip, is that right?

[Diane]: No. It's not right at all…. He hit my lip when we got in the van with his fist.

Tr. pp. 157-58.

Having concluded that the trial court did not abuse its discretion in limiting McClung's cross-examination and, alternatively, that McClung's claimed error would not warrant reversal, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.