**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 05 2012, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILLARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TARIQUE HENDERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1202-CR-50 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1011-FA-89680

**December 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

On March 11, 2010, Appellant-Defendant Tarique Henderson fired a gun at Greggoury Link. Luckily for Link, the bullet missed. Henderson attempted a second shot at Link, but his gun jammed, so Henderson hit Link in the face with the barrel of the gun instead. Prior to Henderson's trial for Class A felony attempted murder and Class B felony unlawful possession of a firearm by a serious violent felon, Appellee-Plaintiff the State of Indiana made an oral request to exclude certain testimony relating to an alleged prior encounter between Henderson and Link during which Henderson claimed he rejected a sexual proposition from Link. The trial court granted the State's request, with the caveat that Henderson's counsel could ask Link about any encounters he may have had with Henderson prior to May 11, 2010. Henderson was subsequently convicted of both Class A felony attempted murder and Class B felony unlawful possession of a firearm by a serious violent felon. On appeal, Henderson claims that the trial court erred in excluding testimony relating to Henderson's prior rejection of Link's alleged sexual advances. Concluding that Henderson waived this challenge on appeal, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On March 11, 2010, Henderson drove his girlfriend's gold Dodge Intrepid to 16th Street Automotive in Indianapolis, where he parked the Intrepid on the sidewalk in an attempt to block the shop's driveway. As Henderson exited the vehicle, he beat his fist into his palm. Henderson then confronted the shop's owner, Stanley McNeil, about what he perceived to be inadequate work that McNeil had done on his vehicle.

After a few minutes, Link, who was working on his red Pontiac Firebird in front of the

2

shop, approached Henderson and McNeil and intervened on McNeil's behalf. Link told Henderson that McNeil "ain't like that," insinuating that McNeil was an honest mechanic who would fix a customer's vehicle if he knew what was wrong with it. Tr. p. 62. Henderson replied to Link by saying, "mother f***er, who are you? You don't know me. I'll kill you mother f***er." Tr. p. 63.

Henderson then approached Link while Link was sitting in the driver's seat of his vehicle. Henderson pulled a gun from his waistband and pointed it at Link. Henderson again said that he was going to kill Link and walked closer to Link's vehicle. After reaching Link's vehicle, Henderson stuck the gun into Link's open window and pointed the gun at Link's face. Henderson fired a shot at Link. Luckily for Link, the bullet missed and instead went through the plastic molding in the right rear passenger compartment and flattened the right rear tire. The gun jammed as Henderson attempted to reload it. Henderson then hit Link in the face with the barrel of the gun before fleeing in the Intrepid.

Indianapolis Public School Police Officer John Morris witnessed the events from the outside of the school located across the street from the shop. Upon hearing a "loud pop," Officer Morris immediately informed dispatch of the altercation. Tr. p. 142. As Officer Morris approached the shop, he saw Henderson flee in the Intrepid. Officer Morris observed that Link, who was still sitting in the driver's seat of his vehicle holding the steering wheel with both hands, appeared dazed. After Link exited his vehicle, Officer Morris saw a spent casing on the steering wheel cover and a live round in the driver's seat. At least one other individual, Sammie Hobson, who was at the shop at the time of the altercation, witnessed the

3

altercation. Officer Morris, Link, and Hobson were each able to later identify Henderson as the shooter.

On November 30, 2010, the State charged Henderson with Class A felony attempted murder[1] and Class B felony unlawful possession of a firearm by a serious violent felon.[2] Prior to the beginning of trial, the State made an oral request to exclude certain testimony that related to an alleged prior encounter between Henderson and Link during which Henderson allegedly rejected a sexual proposition from Link. The trial court granted the State's request, with the caveat that Henderson's counsel could ask Link about any other encounters that he may have had with Henderson prior to May 11, 2010. In making this ruling, the trial court stated as follows:

> I think that is a … I suppose you could suppose anything as a possible motive. I don't find that sufficiently clear or probative of this gentleman's state of mind, given the fact that it didn't happen right there, it didn't happen the day before, and there were no words that would indicate state of mind that would substantiate what is … I think it is really drawing something out of nothing so I am not going to allow that.

Tr. p. 10. After trial, the jury found Henderson guilty of Class A felony attempted murder. Following a bench trial, the trial court also determined that Henderson was guilty of Class B felony unlawful possession of a firearm by a serious violent felon. The trial court subsequently sentenced Henderson to an aggregate term of forty years imprisonment with ten years suspended, the last five years executed through community corrections, and two years of probation. This appeal follows.

---

[1] Ind. Code §§ 35-41-5-1 and 35-42-1-1 (2009).
[2] Ind. Code § 35-47-4-5 (2009).

4

**DISCUSSION AND DECISION**

Henderson contends that the trial court improperly granted the State's motion in limine, which sought to exclude any evidence relating to Henderson's alleged prior rejection of Link's sexual advances. Henderson argues that the trial court's ruling violated his right to cross-examine witnesses under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution because the excluded evidence was relevant to show that Link may have had a motive for making the instant allegations against him.

> We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. However, the improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Hernandez v. State*, 785 N.E.2d 294, 300 (Ind. Ct. App. 2003), *trans. denied*.

*Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004).

Moreover, because a motion in limine is not a final ruling on the admissibility of evidence, a ruling on the motion does not preserve the error for appeal. *Watson v. State*, 972 N.E.2d 378, 386 (Ind. Ct. App. 2012). Thus, "[i]n order to preserve an error for appellate review, a party must do more than challenge the ruling on a motion in limine." *Hollowell v. State*, 753 N.E.2d 612, 615 (Ind. 2011) (citing *Azania v. State*, 730 N.E.2d 646, 651 (Ind. 2000)). "Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error." *Id*. at 615-16 (citing Indiana Evidence Rule 103(a)).

5

The record demonstrates that the State made an oral motion in limine to exclude testimony regarding Henderson's alleged prior rejection of sexual advances by Link. The trial court granted the State's motion with the caveat that Henderson's counsel could question Link about whether he had had previously encountered Henderson in a home recording studio in April of 2010. The record further demonstrates that Henderson's counsel did not question Link about this alleged encounter or make an offer to proof during trial regarding the evidence excluded by the motion in limine. As such, Henderson has waived review of this issue on appeal. *See Watson*, 972 N.E.2d at 386-87 (providing that defendant waived his arguments regarding the trial court's granting of the State's motion in limine and exclusion of evidence by failing to offer evidence at trial or making an offer of proof); *see also Barnett v. State*, 916 N.E.2d 280, 287 (Ind. Ct. App. 2009) (providing that defendant's failure to make an offer of proof in accordance with Indiana Evidence Rule 103 resulted in waiver of defendant's challenge to the exclusion of evidence on appeal).

Furthermore, even if Henderson had properly preserved his challenge to the trial court's decision to grant the State's motion in liminie, we conclude that Henderson's claim on appeal would fail because any potential error associated with the trial court's decision amounted, at most, to harmless error. The Indiana Supreme Court has held that although a primary interest secured by the Confrontation Clauses of both the federal and Indiana constitutions is the right of cross-examination, a criminal defendant's right to confront witnesses is nevertheless subject to reasonable limitations placed at the discretion of the trial court to address concerns about harassment, prejudice, confusion, or interrogation on issues

only marginally relevant. *Standifer v. State*, 718 N.E.2d 1107, 1109-10 (Ind. 1999). Further, even if the trial court erroneously denies a defendant an opportunity to fully cross-examine a witness about his bias or motive, an individual's convictions will not be reversed if the State can demonstrate beyond a reasonable doubt that the error was harmless in that it "did not contribute to the verdict obtained." *Id*. at 1110 (internal quotation omitted). "Whether the trial court's error is harmless depends on several factors including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id*. (internal quotation omitted).

Again, in the instant matter, Henderson claims that the trial court erred in granting the State's motion in limine because the exclusion of evidence of his alleged rejection of Link's sexual advances effectively denied the right to cross-examine Link to show that this alleged rejection of Link could have been Link's motive for testifying against him at trial. Link's testimony, however, was cumulative of two other witnesses' testimony who corroborated Link's testimony. Hobson testified that he saw a gun in Henderson's hand after he heard the shot and saw Henderson "cock[] it again [but] it didn't go off." Tr. p. 238. Likewise, Officer Morris watched the scene unfold, and, after hearing a loud "pop," "saw [Henderson] with his right hand in the driver's window and his left hand [] pulling back something." Tr. p. 143. Officer Morris testified that based on his experience as a police officer, Henderson's action was consistent with pulling back the slide on a semi-automatic handgun. In addition,

7

the trial court permitted Henderson's counsel to conduct extensive cross-examination, nearly all of which was tailored to test Link's credibility as a witness. In light of the extensive cross-examination of Link permitted by the trial court in conjunction with the testimony of Hobson and Officer Morris corroborating Link's testimony, we conclude that any error committed by the trial court by granting the State's motion in limine was, at most, harmless.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.