**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| YONI SOLIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-CR-971 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1112-FA-87521

**August 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

Yoni Solis appeals his convictions and sentence for molesting his girlfriend's young daughter. We affirm.

In September 2005, Concepcion Olivares left her husband Armando Nabor and took their two-year-old daughter Y.N. with her. At the time, Olivares was pregnant with their second daughter. While Y.N. was still two, Nabor found them and was allowed to visit Y.N. regularly for a few months. Olivares and Y.N. then disappeared again, and after that Nabor saw Y.N. only when he could find her and when Olivares would allow it.

Y.N. and her sister later lived in Mexico with Nabor's mother, but Olivares then took them without informing Nabor. He later found them in Indianapolis, but Olivares did not allow him to see his daughters much and told them he was just a friend. Nabor hired an attorney, and by March 2011, he exercised regular parenting time with the girls.

Meanwhile, Solis began a relationship with Olivares in December 2009 and lived with her and her children as a family.[1] When Y.N. was seven, Solis molested her several times. He performed oral sex on her, put his fingers inside her vagina and anus, made her touch his penis, and kissed her body. Y.N. responded by kicking, pushing, and running away from him, hiding under the bed, and telling him to stop and to go away.

As a result of the molestations, Olivares took her children and moved in with her mother in June 2011. She told Nabor about the abuse and took Y.N. to a hospital. There, Olivares agreed to a safety plan in which Y.N. would have no unsupervised contact with Solis. The police were unable to locate Solis, and a warrant was later issued for his arrest.

---

[1] Olivares had a third child before meeting Solis and soon had a fourth child with him.

Despite moving out, Olivares continued to talk with Solis on the phone. When she told him what Y.N. had said about him, he was scared and said he was going to move to Chicago. Olivares did not like living with her mother, and Solis subsequently arranged for her and the children to move into an apartment. At some point, Solis moved into the apartment as well and resumed molesting Y.N. He put his finger inside her vagina, touched her anus, and kissed her on the mouth.

Nabor knew Solis was to have no contact with Y.N. but saw him around the apartment when he went to get his daughters. Y.N. denied to her father that Solis was living there because Olivares told her that if she said anything, the police would take her family away. When Nabor saw Solis around the apartment again, Y.N. admitted he was living with them and later told her father that he was still touching her. Nabor called the police. When the police went to the apartment, Solis fled out the back door but was detained. He gave the police a fake name, but he was identified by his tattoos.

The State charged Solis with seven counts of child molesting, four as Class A felonies and three as Class C felonies. On the first day of his jury trial in October 2012, Solis informed the trial court of his intent to introduce evidence that Nabor had immigration problems and wanted to use his children as a reason to stay in the country. The State asked the court to prohibit evidence of Nabor's immigration status. In a preliminary ruling, the court said, "I don't see what the immigration issue has to do with this, and I won't allow it." Tr. p. 33.

During trial, after the State's direct examination of Nabor, Solis made an offer of proof concerning the admissibility of Nabor's immigration issues. Outside the jury's

3

presence, Solis elicited evidence from Nabor that he had had immigration issues since 2006 when he was arrested for public intoxication and that a deportation proceeding was scheduled for July 2013. Nabor acknowledged that his attorney told him that showing he had family in the United States would help in the immigration proceedings. Solis asked, "So, establishing being their father and being the person that they live with would help you in your Immigration proceedings; isn't that correct?" *Id.* at 124. Nabor responded, "That's right." *Id.* The State immediately followed up with:

> Q. Armando, if your children lived with their mother and not with you, your Immigration issues would be affected the same; is that right?
> A. That's right.
> Q. So, they don't have to live in your home in order for you to avoid being deported?
> A. Yes.
> . . . .
> Q. And in fact, you told the defense attorneys in this case at a deposition that you haven't talked to your lawyer about this case and [Y.N.]?
> A. No.

*Id.* at 124-25. The court again prohibited the evidence.

Solis later asked Olivares, outside the jury's presence, why Nabor came back around to see his children. Olivares said Nabor told her he wanted to see his daughters and needed proof that he had children in the country in order to stay in the country. The court again ruled that evidence about Nabor's immigration issues was inadmissible.

The jury found Solis guilty as charged, and the court sentenced him to an aggregate term of eighty years, with seventy years executed and ten years suspended.

Solis now appeals, raising two issues for our review: (1) whether the trial court violated his constitutional rights by excluding evidence of Nabor's immigration issues, and (2) whether his sentence is inappropriate.

## I. EXCLUSION OF EVIDENCE

Solis contends the exclusion of evidence of Nabor's immigration issues violated his constitutional rights to confrontation,[2] to have a jury determine the facts,[3] and to present a defense.[4] These constitutional rights, however, are subject to reasonable limitations placed at the discretion of the trial court. *See Standifer v. State*, 718 N.E.2d 1107, 1110 (Ind. 1999) ("A criminal defendant's Sixth Amendment right to confront witnesses is nevertheless subject to reasonable limitations placed at the discretion of the trial court to address concerns about harassment, prejudice, confusion or interrogation on issues only marginally relevant.").

Solis argues the trial court should not have prohibited him from cross-examining Nabor on his immigration issues or otherwise excluded such evidence. Specifically, Solis intended to challenge the credibility of both Y.N. and Nabor by showing that Nabor faced deportation proceedings, learned from his attorney that having his daughters living with him would help him stay in the country, and thus convinced Y.N. to falsely accuse Solis of molesting her so that Nabor could gain custody.

---

[2] Solis cites the confrontation clauses of both the federal and state constitutions.

[3] Solis cites Article 1, Section 19 of the Indiana Constitution, which states, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

[4] Solis cites the federal due process, compulsory process, and confrontation clauses.

Solis's offer of proof, however, failed to show this alleged ulterior motive. Although Nabor admitted that he faced deportation proceedings and that his attorney told him having family in the country would help his case, he also stated that it did not matter whether his daughters lived with him or Olivares. Indeed, he had not even spoken to his attorney about Solis's abuse of Y.N. Solis's questioning of Olivares similarly failed to produce the desired testimony. Olivares simply stated that Nabor told her he needed proof that he had children in the country. None of this evidence shows any ulterior motive for the accusations or any bias or prejudice on the part of Y.N. or Nabor.

Solis nonetheless argues that Nabor gave evidence of an ulterior motive by responding affirmatively when asked, "So, establishing being their father *and being the person that they live with* would help you in your Immigration proceedings; isn't that correct?" Tr. p. 124 (emphasis added). This argument fails for the simple fact that Nabor immediately clarified that whether his daughters lived with him had no bearing on his immigration issues.

We therefore conclude that the trial court did not abuse its discretion by excluding evidence of Nabor's immigration issues. *See Kirk v. State*, 797 N.E.2d 837, 840-41 (Ind. Ct. App. 2003) (trial court did not abuse discretion in restricting scope of cross-examination where offer of proof failed to show victim had any ulterior motive in accusing defendant of sexual misconduct), *trans. denied*.

## II. INAPPROPRIATE SENTENCE

Solis also contends his sentence is inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of

6

the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007)). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.*

We first look to the statutory ranges established for the classes of the offenses. Solis was convicted of four Class A felonies and three Class C felonies. The statutory range for a Class A felony is between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4 (2005). The statutory range for a Class C felony is between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6(a) (2005). The trial court sentenced Solis to an aggregate term of eighty years, with seventy years executed and ten years suspended, and designated him a credit restricted felon.

We next look to the nature of the offenses and Solis's character. Although Solis's presentence investigation report reveals no prior criminal history, the nature of the offenses alone justifies the sentence imposed by the trial court. Solis abused a position of trust to repeatedly molest his girlfriend's young daughter over an extended period of time. Y.N. kicked, pushed, and ran away from him, hid under the bed, and told him to stop and to go away, but Solis nonetheless continued a pattern of abuse. In addition, it

7

speaks volumes of his character that he moved back into the home and continued to subject Y.N. to abuse even after she was examined at the hospital and the police began its investigation. Solis has failed to persuade us that his sentence is inappropriate.

We therefore affirm Solis's convictions and sentence.

NAJAM, J., and VAIDIK, J., concur.